# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEON PRICE,                )<br>                                           )<br>            Plaintiff,         )<br>                                           )   Civil Action No. 10-1479<br>      v.                                  )<br>                                           )   **ELECTRONICALLY FILED**<br>MICHAEL J. ASTRUE,   )<br>Commissioner of Social Security,   )<br>                                           )<br>            Defendant.     ) | |

## MEMORANDUM OPINION

**I.   INTRODUCTION**

Leon Price ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 – 433 ("Act").  This matter comes before the Court on Cross-Motions for Summary Judgment. (ECF Nos. 7, 9).  The record has been developed at the administrative level.  For the following reasons, Plaintiff's Motion for Summary Judgment (ECF No. 7) will be DENIED, and Defendant's Motion for Summary Judgment (ECF No. 9) will be GRANTED.

## II. PROCEDURAL HISTORY

Plaintiff filed for DIB with the Social Security Administration on August 5, 2008, claiming an inability to work due to disability beginning May 8, 2008. (R. at 94)[1]. Plaintiff was initially denied benefits on October 3, 2008. (R. at 49 – 53). A hearing was scheduled for November 27, 2009, and Plaintiff appeared to testify represented by counsel. (R. at 22). A vocational expert also testified. (R. at 22). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on January 20, 2010. (R. at 7 – 21). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on September 17, 2010, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 4).

Plaintiff filed his Complaint in this Court on November 8, 2010. (ECF No. 3). Defendant filed his Answer on January 21, 2011. (ECF No. 4). Cross-Motions for Summary Judgment followed.

## III. STATEMENT OF THE CASE

In his decision denying DIB to Plaintiff, the ALJ made the following findings:

1. The [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013;

2. The [Plaintiff] has not engaged in substantial gainful activity since May 8, 2008, the alleged onset date;

3. The [Plaintiff] has the following severe impairments: obesity; obstructive sleep apnea; gastroesophageal reflux disease; and bipolar disorder;

---

[1] Citations to ECF Nos. 5 – 5-10, the Record, *hereinafter*, "R. at __."

4. The [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments under 20 C.F.R., Pt. 404, Subpt. P, Appx. 1;

5. [T]he [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b); occasional postural movements except no climbing ladders, ropes, or scaffolds, and no crawling; no concentrated exposure to workplace hazards; limited to simple work duties with one to three step instructions; no detailed or complex work duties; no prolonged attention to detail; no more than occasional interaction with the general public, which should be of a simple superficial nature; and capable of making simple work related decisions;

6. The [Plaintiff] is unable to perform any past relevant work;

7. The [Plaintiff] was born June 15, 1972, and is currently 37 years old, which is defined as a younger individual;

8. The [Plaintiff] has a high school equivalent education and is able to communicate in English;

9. Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is "not disabled," whether or not the [Plaintiff] has transferable jobs skills;

10. Considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform; and,

11. The [Plaintiff] has not been under a disability, as defined in the Social Security Act, from May 8, 2008, through the date of this decision.

(R. at 12 – 18).

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[2] and 1383(c)(3)[3]. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. *See* 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether substantial evidence exists in the record to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)(quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). In short, the court can

---

[2] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[3] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

only test the adequacy of an ALJ's decision based upon the rationale explicitly provided by the ALJ. The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d. Cir. 1986).

To be eligible for social security benefits under the Act, a claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir 1986). The ALJ must utilize a five-step sequential analysis when evaluating whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to

prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

V. **DISCUSSION**

In the present case, Plaintiff objects solely to the determination by the ALJ that his subjective complaints were not fully credible. (ECF No. 8 at 4 – 9). Specifically, Plaintiff alleges that his complaints of fatigue and physical pain were supported by objective medical evidence and expert opinion, and should not have been so readily discounted. (ECF No. 8 at 5).

With respect to subjective complaints, an ALJ should accord subjective complaints of pain the same treatment as objective medical reports, and weigh the evidence before him. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 122 (3d Cir. 2000). Serious consideration must be given to subjective complaints of pain where a medical condition could reasonably produce such pain. *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993). Moreover, there need not be objective evidence of a subjective complaint, and the ALJ must explain his rejection of same. *Id.*; *Burnett*, 220 F.3d at 122. When medical evidence provides objective support for subjective complaints of pain, the ALJ can only reject such a complaint by providing contrary objective medical evidence. *Mason*, 994 F.2d at 1067-68. Even when an ALJ has personally observed a claimant, personal observations may not be the sole basis for rejecting subjective complaints of pain. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999) (citing S.S.R. 95-5p at 2 (1995)).

The ALJ is required to assess the intensity and persistence of a claimant's pain, and determine the extent to which it impairs a claimant's ability to work. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). This includes determining the accuracy of a claimant's subjective

6

complaints of pain. *Id.* However, while pain itself may be disabling, and subjective complaints of pain may support a disability determination, allegations of pain suffered must be consistent with the objective medical evidence on record. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Burnett*, 220 F.3d at 122.

An ALJ must also give a claimant's subjective description of his or her inability to perform light or sedentary work serious consideration when this testimony is supported by competent evidence. *Schaudeck*, 181 F.3d at 433. This necessitates a determination by the ALJ as to the extent to which a claimant is accurately stating the degree of his disability. *Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529(c)). "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433 (emphasis omitted).

Plaintiff contends that the testimony that his sleep was significantly disturbed due to sleep apnea – requiring frequent naps throughout the day – was supported by a sleep study showing "significant respiratory disturbance," and "marked disruption of sleep architecture," in April of 2008. (ECF No. 8 at 5; R. at 147). It was also noted by Plaintiff that a CPap machine, used to help Plaintiff sleep, was switched due to ineffectiveness. (ECF No. 8 at 5). According to Plaintiff's testimony, a BiPap machine prescribed as a replacement for the CPap machine was also ineffective. (ECF. No. 8 at 5).

7

However, as pointed out by Defendant and explained by the ALJ, Jayesh Gosai, M.D. – Plaintiff's treating physician – marked Plaintiff's sleep apnea as, "stable," in treatment records, and most often did not mention the condition at all or any of the functional limitations claimed by Plaintiff. (ECF No. 10 at 8; R. at 13 – 14, 16, 147, 245, 257, 347, 353, 355 – 65, 367 – 68, 370, 376). Further, Dr. Gosai never listed sleep apnea as a diagnosis on the physical residual functional capacity ("RFC") assessment he completed in June of 2009. (ECF No. 10 at 8; R. at 13 – 14, 342). While Dr. Gosai did mention in the RFC that Plaintiff suffered from insomnia, and that he used a BiPap machine for treatment, he never attributed any functional limitations to the insomnia. (R. at 342 – 45). He also provided no narrative explanation for his RFC findings. (R. at 342 – 45). Further, during his sleep study, Charles M. Koliner, M.D. found that Plaintiff had the potential to improve his insomnia considerably, despite findings of sleep disruption. (R. at 148). The ALJ's determination that the subjective complaints Plaintiff attributed to his sleep apnea were inconsistent with the severity of symptoms and control demonstrated by the record, was, therefore, supported by substantial evidence.

Plaintiff next takes issue with the ALJ's consideration of his activities of daily living and potential financial motivation to dishonestly magnify his alleged symptoms, to discredit his testimony. (ECF No. 8 at 6). While the ALJ does rely upon these factors to partially support his determination of ineligibility for DIB, the preponderance of his discussion of Plaintiff's functional abilities and credibility focuses upon Plaintiff's medical records. (R. at 14 – 17). The ALJ noted that diagnostic imaging studies of Plaintiff's entire spine showed no significant abnormality. (R. at 15). In fact, most physical diagnostic studies showed few abnormalities of any significance, and Dr. Gosai typically found Plaintiff's physical conditions to be stable. (R. at 16, 185 – 86, 196 – 98, 209, 212, 221, 245 – 47, 250 – 51, 257, 278, 296, 347, 353, 355 – 65, 367

8

– 68, 370, 376, 380, 383 – 86, 390, 458). In a September 2007 examination, Plaintiff denied musculoskeletal complaints and headaches, and had a normal physical examination. (R. at 15, 245 – 47). Similar findings were made on June 11, 2008, and June 11, 2009. (R. at 349, 369). A Physical RFC assessment completed by state agency physician Paul Fox, M.D. also provided a thorough analysis of Plaintiff's medical record, and also found Plaintiff's complaints of functional limitation and pain to be only partially credible. (R. at 15, 324 – 30). The ALJ's reliance on the divergence between Plaintiff's subjective complaints and the medical evidence, alone, was more than enough to justify his credibility and functional capacity determinations. *Jackson v. Barnhart*, 120 Fed. Appx. 904, 907 (3d Cir. 2005).

**VI. CONCLUSION**

Based upon the foregoing, the Court finds that the ALJ thoroughly discussed all relevant medical evidence and put forth sufficient evidence from the record to justify his decision that Plaintiff was not disabled. As such, substantial evidence supports the ALJ's findings.

Accordingly, Plaintiff's Motion for Summary Judgment will be denied, Defendant's Motion for Summary Judgment will be granted, and the decision of the ALJ will affirmed. An appropriate Order follows.

*/s Arthur J. Schwab*
Arthur J. Schwab
United States District Judge

cc/ecf: All counsel of record.